## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL ACTION NO. 4:09-cr-0228** |
| | § | |
| **JEFFERY NORSWORTHY** | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Suppress Illegally Seized Evidence. (Doc. No. 17.) For the following reasons, this Motion shall be denied.

## I. INTRODUCTION

On January 2, 2009, at approximately 10:30 a.m., Deputy C. Kowis, a Harris County Sheriff's Deputy and certified narcotics dog handler, assigned to the Narcotics Unit, received a call from an anonymous caller who identified him or herself as a "concerned citizen" and said that "someone was selling methamphetamines out of a house at 1303 Great Dover Court in Channelview, Texas."[1] Four hours later, Deputy Kowis attempted a "knock and talk" investigation at the location along with his canine partner "Elmo," a certified drug sniffing dog, but no one was home. Elmo conducted a "free air sniff" at the lower seam of the front door and garage door of the residence at which time Elmo sat down, indication that Elmo was alerting to the presence of illegal substances including marijuana, cocaine, heroin, or methamphetamine. At that time, Deputy Kowis ran the license plate of a white 2005 Cadillac Escalade parked in the driveway and determined that it was registered to Defendant, known to investigators as an individual with prior drug arrests.

---

[1] Unless otherwise noted, the facts are drawn from this search warrant affidavit.

Deputy Kowis and other Harris County Sheriff's deputies secured the outside perimeter of the residence as they prepared the affidavit for a search warrant. The deputies remained there until they entered the house, except for Deputy Kowis. At approximately 3:00 p.m., while posted outside the house, investigators observed Defendant, who they recognized, drive towards the residence on a blue motorcycle, with a female riding on the rear, but flee once he saw the investigation team and the marked Harris County Sheriff patrol vehicles. Deputy Kowis and Harris County Sheriff's Sergeant Toquica pursued Defendant until he lost control and crashed his motorcycle. Defendant was found with over $8000 in United States currency to which Elmo alerted for the presence of one of the aforementioned illegal narcotics.[2] Defendant and the female passenger were arrested and taken back to Defendant's house in a marked car. They remained in the car until the conclusion of the investigation and search.

Kowis relayed these facts to his colleague, Deputy T.A. Windsor, a Harris County Sheriff's Department, Narcotics Division peace officer, who has specialized training in narcotics investigations. Deputy Windsor purportedly knows through experience that drug dealers frequently store at their residences ledgers, money counters, customer and supplier lists and packaging materials in furtherance of their criminal enterprise. Deputy Windsor relayed the anonymous tip, the alert by Elmo, the identification of a car belonging to Defendant, known to have prior drug arrests, Defendant's flight upon seeing law enforcement personnel at his residence, Defendant's possession of over $8000 at the time of his arrest, and the detection of narcotics on the $8000 at the time of arrest. Harris County Magistrate and Criminal Hearing Officer Frank Aguilar issued a warrant for law enforcement officers to search the residence.

---

[2] At the suppression hearing, Kowis admitted that the affidavit supporting the search warrant explains that Defendant had approximately $8000 whereas the offense report describes approximately $12080. The Court does not find this discrepancy to significantly damage Kowis's credibility.

On January 2, 2009, law enforcement officers executed the search warrant. They first entered the house and made a sweep to clear the residence of possible suspects. Then they conducted a detailed physical search and discovered suspected methamphetamines, valium, and Ecstasy, as well as drug paraphernalia, firearms, ammunition, suspected drug ledgers, hand-held radios and related equipment with all of Harris County Sheriff's Office channels; a cutting agent; zip lock bags for packing individual amounts of controlled substances; and approximately $54,000.

Defendant alleged that a neighbor heard glass breaking and observed the officers first enter through the rear of the house; Defendant's family took pictures the next morning showing damage to the rear of the house. (Doc. No. 17, Ex. 2.) These pictures were taken in daylight and include an electronic date stamp, possibly from the camera that took them, of January 3, 2009. The neighbors did not testify at the suppression hearing. Defendant testified that, when he left the house on January 2 prior to his return and motorcycle chase, the house windows were not broken. Cindy Cox, Defendant's ex-wife, testified that she arrived at the house on January 2, 2009, to find Defendant in a marked Harris County officer's patrol car and then followed him when he was taken into custody at the Wallisville Substation for booking into the Harris County Jail. She contends that she returned to the house after that and found the house windows broken. None of the witnesses who testified remained at Defendant's house from the time that the deputies established the perimeter until the next day, January 3, when the windows were found broken. The deputies finished executing the search warrant late in the evening, perhaps around midnight.

Defendant was indicted on one count of felon in possession of a firearm. Defendant now moves, pursuant to the Fourth and Sixth Amendments to the United States Constitution, to suppress the evidence seized in the search.[3]

## II. MOTION TO SUPPRESS

### A. Standard

The Fourth Amendment provides in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." United States Const. Amend. IV. The exclusionary rule requires the court to suppress evidence on the basis of a warrant that is not supported by probable cause. *See, e.g. United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006); *Mapp v. Ohio*, 367 U.S. 643 (1961). The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *See United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). To prevail on a motion to suppress, the Government must demonstrate by a preponderance of the evidence that the challenged evidence was lawfully obtained. *United States v. Matlock*, 415 U.S. 164, 178, n. 14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

### B. Whether the Search Warrant is Facially Defective

#### 1. Signature by a Harris County Criminal Law Hearing Officer Rather than District Court Judge

Defendant notes that, pursuant to Article 2.09 and Article 18.01(c) of the Texas Code of Criminal Procedure, a criminal law hearing officer is not authorized to sign a Subdivision 10,

---

[3] Neither party presented argument on the Sixth Amendment violation.

Article 18.02 warrant ("evidentiary warrant")—evidentiary warrants may only be signed by a judge of a municipal court of record, not a criminal law hearing officer like Hearing Officer Aguilar.

Any magistrate may sign a warrant issued pursuant to subdivisions 1 through 9 of section 18.02.[4] The Government argues that the search warrant was issued pursuant to Article 18.02(7) or a warrant for "drugs kept, prepared or manufactured in violation of the laws of Texas." As this Court has noted, any magistrate may issue a warrant for the search of controlled substances and related paraphernalia under subdivision 7. *See United States v. Jackson*, H-06-0090, 2006 WL 1492277, at *2 (S.D. Tex. May 25, 2006) (denying a motion to suppress for a warrant authorizing a search for methamphetamine as well as associated records, currency, papers and other items constituting evidence of the possession, illegal manufacture, and distribution of methamphetamine).

---

4 A search warrant may be issued to search for and seize:
>(1) property acquired by theft or in any other manner which makes its acquisition a penal offense;
>(2) property specially designed, made, or adapted for or commonly used in the commission of an offense;
>(3) arms and munitions kept or prepared for the purposes of insurrection or riot;
>(4) weapons prohibited by the Penal Code;
>(5) gambling devices or equipment, altered gambling equipment, or gambling paraphernalia;
>(6) obscene materials kept or prepared for commercial distribution or exhibition, subject to the additional rules set forth by law;
>(7) a drug, controlled substance, immediate precursor, chemical precursor, or other controlled substance property, including an apparatus or paraphernalia kept, prepared, or manufactured in violation of the laws of this state;
>(8) any property the possession of which is prohibited by law;
>(9) implements or instruments used in the commission of a crime;
>(10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense;
>(11) persons; or
>(12) contraband subject to forfeiture under Chapter 59 of this code.

Tex. Code Crim. Pro. Art. 18.02.

Subdivision 10 is a catch-all section that applies only when the other articles do not.[5] *See,*

*e.g., State v. Young*, 8 S.W.3d 695, 698 (Tex. App—Fort Worth 1999, no pet.). When a search

warrant may be categorized as issued under a different subdivision, it is not an evidentiary

warrant. *See id.* (reversing a trial court's grant of a motion to suppress because the search warrant

to seize "1. Keltec 9mm pistol or any other 9mm pistols" was categorized as a subdivision 9

warrant rather than an evidentiary warrant). Even if the affidavit for the search warrant and the

warrant itself are titled pursuant to subdivision 10, a court may construe the search warrant as

permissibly issued by a justice of the peace under a different subdivision. *State v. Acosta*, 99

S.W.3d 301, 304 (Tex. App.—Corpus Christi 2003, pet. ref'd) (reversing because the trial court

should have denied the motion to suppress based on the substance of the warrant, not its title);

*State v. Maldonado*, 2002 WL 34230975 (Tex. App.—Corpus Christi Dec. 19, 2002, no pet.). In

*Acosta*, the warrant, titled as Subdivision 10, explained that "[Y]ou shall search for and, if the

same be found, seize and bring before me the property described in the affidavit, to wit:

COCAINE;" the Court construed it as a subdivision 7 warrant. 99 S.W.3d at 304.

Defendant contends that *Young* and *Acosta* do not apply.[6] Defendant notes that the *Young*

court specifically addressed whether a warrant to seize a gun (not a gun and other evidence) and

---

[5] Subdivision 10 also has special requirements that the warrant specifically describe the property or items to be seized:

> A search warrant may not be issued pursuant to Subdivision (10) of Article 18.02 of this code unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. Except as provided by Subsections (d) and (i) of this article, only a judge of a municipal court of record or county court who is an attorney licensed by the State of Texas, statutory county court, district court, the Court of Criminal Appeals, or the Supreme Court may issue search warrants pursuant to Subdivision (10), Article 18.02 of this code.

TEX. CODE CRIM. PRO. ANN. art. 18.01(c).

[6] He also contends that *Zarchyta* does not apply. The Court only discusses that case in the context of the plain view exception to the search warrant requirement and therefore does not rely on it in evaluating Defendant's arguments regarding Hearing Officer Aguilar's authority to issue the warrant.

was a subdivision 10 rather than a subdivision 9 warrant. Because subdivision 9 pertains to "implements or instruments used in the commission of a crime," the court held that the warrant was permissibly signed by a hearing officer. Likewise, the *Acosta* warrant authorized the seizure of cocaine (not cocaine and other evidence) and the court found it properly authorized by a hearing officer, even though it was titled an evidentiary warrant. Defendant contends that, in this case, the warrant sought the seizure of illegal drugs as well as items "that can only be characterized as mere evidence."

Here, Hearing Officer Aguilar issued a warrant that ordered peace officers to go to Defendant's address:

> for the purpose of searching for and seizing drugs kept, prepared or manufactured in violation of the laws of Texas and any property the possession of which is prohibited by law located therein, property specially designed, made, or adapted for or commonly used in the commission of an offense and implements or instruments used in the commission of a crime.

(Doc. No. 17, Ex. 1.) In his affidavit, Deputy Windsor noted that Elmo had alerted to illegal narcotics and explained his training and experience led him to believe that drug dealers often have ledgers, money counters, customer and supplier lists and packaging materials in furtherance of the criminal enterprise at their residences. Deputy Windsor then stated his belief that there was probable cause to believe that illegal drugs and property specially designed, made, or adapted for or commonly used in the commission of an offense and implements or instruments used in the commission of a crime were located at Defendant's address. The warrant was not titled under subdivision 10. Instead, it was issued to allow peace officers to search for illegal drugs and associated materials. Other Texas courts of appeals have construed similar search warrants as properly signed by a hearing officer. For example, in *Lindley v. State*, the affidavit articulated the grounds for issuance of the warrant as

> There is at said suspected place and premises property concealed and kept in violation of the laws of Texas and described as follows: Amphetamine and Methamphetamine and equipment, chemicals and other devices used in its manufacture and production of amphetamine or methamphetamine.

736 S.W.2d 267, 274 (Tex. App.—Fort Worth 1987, writ ref'd). The *Lindley* court held that, because the warrant does not specifically describe property or items to be seized, nor does it specifically describe property or items that constitute evidence of a specific offense, the warrant was not an evidentiary warrant. *Id.* The court concluded the allegations in the affidavit were grounds for a warrant pursuant to subdivision 7 or 9 and therefore properly issued by a hearing officer.[7] Likewise, in *Scott v. State*, the court held that a warrant authorizing the seizure of items of child pornography as well as checks in the name of the defendant was properly issued by a magistrate under subdivisions 7 and 9. 868 S.W.2d 430, 432-33 (Tex. App.—Waco 1994, pet history). Given the permissive standard employed by state courts in Texas, the search warrant was permissibly signed by a hearing officer such that it is valid pursuant to subdivisions 7 and 9.[8]

---

[7] In contrast, in *Porath v. State*, the court held that the following was a properly issued evidentiary warrant:

> the search warrant commands a peace officer to search appellant's residence and "seize the property or items requested in [the officer's affidavit]." [The officer] in his affidavit, sought to seize "property or items constituting evidence that [appellant] has committed the offense of Enticing a Child or Indecency with a Child including computers, computer hardware, computer software, computer disks, books, magazines, videotapes, photographs and any reproductions of the above."

148 S.W.3d 402, 408 (Tex. App.—Houston [14 Dist.] 2004, no pet.).

[8] The only case the Court found wherein a Texas court discussed the suppression of evidence because of an impermissible subdivision 10 warrant was *Tallant v. State*, 742 S.W.2d 292 (Tex. Crim. App. 1987), a case involving aggravated rape and a search that seized obscene photographs. In that case, however, some of the criminal appeals court judges thought that the state agreed that the warrant had been a subdivision 10 warrant impermissibly issued by a magistrate and not a judge as required by Article 18.01(c) of the Texas Code of Criminal Procedure. The criminal appeals court therefore did not discuss the standard for reviewing a subdivision 10 because it found that the issue had not been preserved for appeal. In a concurrence, however, Judge Teague concluded that "[t]here can be no question but what the warrant was an evidentiary search warrant and because of the defect discussed its issuance was void ab initio." 742 S.W.2d at 299 (Teague, J, concurring). "The Court of Appeals did not hold that the trial court erred in failing to grant the motion to suppress [the photographs] but only used the argument advanced under the point of error claiming such error as the basis for reversal. The Court of Appeals in effect found the photographs were not properly admitted because the search warrant was void ab initio." *Id.* In dissent, Judge McCormick did not find that the state had acknowledged the error, but only that, had the warrant been issued in error, it argued that the error was harmless because evidence was merely cumulative. 742 S.W.2d at 301 (McCormick, J, dissenting). The Court attempted to locate a copy of the appeals court opinion in this case but was unable to secure one from clerk of

Moreover, even were the warrant impermissibly issued under Texas law, suppression would not be warranted for purposes of the Fourth Amendment of the U.S. Constitution.[9] Several circuits hold that a procedural violation of state law in securing a warrant should not result in suppression. *See, e.g., United States v. Castillo*, 449 F.2d 1300, 1301 n.2 (5th Cir. 1971); *United States*, 443 F.3d 615, 624 (8th Cir. 2006) (holding that a warrant that did not comply with the procedural requirements of Missouri law should not be suppressed because it was presented to a magistrate and supported by probable cause; the court suggested that, in other circumstances suppression might be warranted if the law was either deliberately violated or the defendant was prejudiced by the violation); *United States v. Gilbert*, 942 F.2d 1537 (11th Cir. 1991) (declining to suppress evidence even though the search warrant did not comply with Florida law because it did not offend constitutional principles). *See also United States v. Sims*, 103 F.3d 125, at *4 (5th Cir. 1996) (not designated for publication) (holding that a failure to affix a return date on the face of the warrant, allegedly required by Mississippi law, did not render the search unconstitutional); *United States v. Franklin*, 284 Fed. Appx. 266, 2008 WL 2611337 (6th Cir. 2008) (upholding that a search conducted pursuant to a warrant issued by a magistrate allegedly acting without jurisdiction because there was no showing that the magistrate was not neutral and detached) (not

the Court of Appeals in Dallas that issued the opinion. Because, however, it does not find the reasoning of the Texas Appeals court (or the reviewing court) controlling in this case, the Court simply notes the existence of these opinions for the sake of completeness.

[9] U.S. Supreme Court decisions regarding the Fourth Amendment are not necessarily binding on the interpretation of section 9. *See e.g., Herman v. State*, 815 S.W.2d 681, 682, 690 (Tex. Crim. App. 1991). "[I]t is possible that section 9 provides more protection to Texas citizens than the Fourth Amendment does. However, Texas courts have rejected claims that the protections of the Texas Constitution exceed those of the Fourth Amendment when no authority is argued or provided for such an interpretation." *See. e.g. Gates v. Texas Dept. of Protective & Regulatory Servs.*, 537 F.3d 404, 437-38 (5th Cir. 2008) (citing *Arnold v. State*, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993)). Moreover, as this is a federal court, the admissibility of evidence is governed by federal law. *See,e.g.,United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992) ("The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution."); *Burge v. Estelle*, 496 F.2d 1177, 1178 (5th Cir. 1974); *United States v. Wicks*, 115 Fed. Appx. 648, 649-50 (5th Cir. 2004) (not designated for publication) (citing *Walker*).

designated for publication) *Cf. United States v. Scott*, 260 F.3d 512 (6th Cir. 2001) (suppressing evidence collected from a search warrant issued by a retired judge who had no legal authority to issue search warrants). In addition, the Supreme Court recently held that, because "state restrictions do not alter the Fourth Amendment's protections," searches undertaken pursuant to an arrest are constitutional even if state law would have forbidden the defendant's arrest. *See Virginia v. Moore*, 128 S.Ct 1598, 1607-08 (2008).

Here, as discussed below, the affidavit supporting the search warrant at issue amply establishes probable cause. In addition, neither side contends that Hearing Officer Frank Aguilar was not neutral and detached. Finally, pursuant to Texas law, Aguilar is considered a magistrate pursuant to Texas Code of Criminal Procedure art. 2.09.

### 2. Particularity of the Search Warrant

Defendant contends that Deputy Windsor's request was impermissibly broad. He asked to search for "any property the possession of which is prohibited by law" and "implements or instruments used in the commission of a crime" does not describe the property to be seized and violates the prohibition against general searches under the United States Constitution and the Texas Constitution, Art. 1 § 9. Defendant contends that Deputy Windsor did not identify the offense or the crime.

The Government responds that the warrant was more particular than Defendant describes and that it was specifically issued for the purpose of searching for and seizing "drugs kept, prepared or manufactured in violation of the laws of Texas." In addition, if the warrant, as here, specifically incorporates the underlying affidavit, the Court may properly consider it as well. *See, e.g. Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (holding that a warrant was lacking in particularity when it failed to describe the items searched at all); *United States v. Shugart*, 117

F.3d 838, 844-45 (5th Cir. 1997). "In reviewing whether a search warrant is sufficiently particular, the court must ask whether the description in the warrant would permit an executing officer to reasonably know what items are to be seized." *United States v. Van Meter*, 280 Fed. Appx. 394 (5th Cir. 2009) (not designated for publication) (quoting *United States v. Shugart*, 117 F.3d at 845).

Defendant cites *Walthall* to define impermissible broadness. There, the warrant authorized seizure of

> "all items of personal property commonly used in the commission of a criminal offense …" The fourth clause authorizes the seizure of "all implements or instruments used in the commission of a crime."

*Walthall v. State*, 594 S.W.2d 74, 78-79 (Tex. Ct. App.1980). The court concluded: "[l]anguage of greater generality is difficult to imagine. These clauses clearly authorize the general, exploratory rummaging which is properly prohibited by the constitutions of this State and of the United States." 594 S.W.2d at 79. The *Walthall* court, however, dealt with items subject to First Amendment concerns (obscene films) and noted that these items must be described with greater particularity than others. *Id*. In addition, the court excised the defective portions and held the first clause of the warrant to be sufficiently particular: "1) a motion picture film as described in the affidavit attached hereto and incorporated herein." 594 S.W.2d at 78. Consequently, even though the language in the warrant was overbroad, the accompanying affidavit, incorporated by reference, describes items with particularity, including drugs and drug paraphernalia, such that warrant was otherwise sufficiently particular. Likewise, in *Andresen v. Maryland*, the Supreme Court approved a warrant that included an exhaustive list of items to be seized but also the phrase "together with other fruits, instrumentalities and evidence of this crime at this (time) unknown." 427 U.S. 463, 479 (1976). It reasoned that, by construing the warrant properly, the

Court could conclude that this general language modified a search for evidence of the particular crime described earlier in the warrant. *Id.*

> Here, the general language does not refer to the specific:

> You are commanded to go straightaway to 1303 Great Dover Court, Channelview, Harris County, Texas 77530, for the purpose of searching for and seizing drugs kept, prepared or manufactured in violation of the laws of Texas and any property the possession of which is prohibited by law located therein, property specially designed, made, or adapted for or commonly used in the commission of an offense and implements or instruments used in the commission of a crime.

The incorporated affidavit includes a description of items that the officers believe may be in Defendant's house including illegal drugs, ledges, money counters, customer and supply lists as well as packaging materials. *See e.g. United States v. Wicks*, 115 Fed. Appx. 648 (5th Cir. 2004) (declining to suppress evidence on the basis of an allegedly insufficiently particular warrant because of the "detailed list of seizable items incorporated by the warrant and the accompanying affidavit"). Both the affidavit and the warrant list Defendant's address, and there is no indication that the residence was a multi-unit dwelling.

Moreover, the Government contends that other evidence was seized because it was in plain view, and more specifically, that the officers had reasonable cause to believe that the evidence discovered was associated with criminal activity when the warrant was executed. *See, e.g. United States v. Bills*, 555 F.2d 1250, 1251 (5th Cir. 1977); *Zarychta v. State*, 44 S.W.3d 155, 167 (Tex. App—Houston [14th Dist.] 2001, pet. ref'd) (describing the plain view exception to the warrant requirement). The Government contends that two weapons were found in plain view in a wall safe once it was opened to search for the presence of drugs, a third was found in plain view on a bookshelf in the living room, and a fourth was recovered in plain view from the kitchen cabinet. (Gov't Exs. 2-6.) In addition, it notes that several rounds of ammunition were

found in plain view in the master bedroom and throughout the premises. Defendant does not respond to the plain view argument.

### C. Application of the Good Faith Exception to the Exclusionary Rule

The Government argues that, even if the affidavit did not establish probable cause, the evidence is admissible based on the good faith exception. Evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible even though the affidavit on which the warrant was based was insufficient to establish probable cause. *See United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997). When evaluating a search conducted pursuant to a warrant, the court must determine (1) whether the good-faith exception to the exclusionary rule applies; and (2) whether probable cause supported the warrant." *United States v. Marmolejo*, 86 F.3d 404, 417 (5th Cir. 1996). If the good faith exception applies, the court need not reach the question of probable cause unless it presents a novel question of law. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003).

### 1. Bare Bones Affidavit

The good faith exception does not apply when an affidavit is so "bare bones" that reliance on the warrant was unreasonable.[10] An affidavit is "bare bones" if it is "so lacking in indicia of probable cause as to render officer's belief in its existence unreasonable."[11] *United States v. Pope*, 467 F.3d at 920 (5th Cir. 2006). *See also United States v. Leon*, 468 U.S. 897, 923 (1984). For example, an affidavit is insufficient if it simply includes something analogous to the phrase: affiant has cause to suspect and reason to believe that contraband is located on the

---

[10] In addition, the good faith exception does not apply: "(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; [(3) bare bones affidavit]... (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." *United States. v. Payne*, 341 F.3d 393, 399-400 (5th Cir. 2003) (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992)).

[11] Probable cause to search exists "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

premises. *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992) (citing *Nathenson v. United States*, 290 U.S. 41, 54 (1933)).

The Government responds that Deputy Windsor's affidavit did not exclusively rely on the anonymous call. Defendant replies that the affidavit is specious for several reasons: (1) the Government only recovered 12 grams of methamphetamines from Defendant's home, less than Elmo would have been able to detect; (2) Elmo's credibility is in question because no methamphetamine was found in the garage or front door area where Elmo alerted[12]; (3) Elmo is not certified to detect diazepam, also seized at the home[13]; (4) Deputy Kowis contacted Deputy Windsor to draft a search warrant on the basis of the anonymous tip and the canine alert alone; (5) the fact that Defendant drove away in response to the presence of police officers at his home does not establish probable cause to search his home; and (6) the officers cannot establish that the money found on Defendant was connected to illegal activity. At the suppression hearing, Defendant declined to provide argument about the training or reliability of Elmo's alerts.

The variety of factors listed in the affidavit including: Elmo's alerts, Defendant's attempted escape when he saw the investigative team at this house, and the investigative team's identification of Defendant's car, in addition to the anonymous tip, renders it more than "bare bones".

An officer may rely on the information provided by confidential informant ("CI") when, based on the totality of the circumstances, it determines that the information is sufficient to establish probable cause: veracity, reliability, and the informant's basis of knowledge are "highly

---

[12] There is no caselaw support for the theory that an affidavit must show how reliable a drug-detecting dog has been in the past. *United States v. Daniel*, 982 F.2d 146, 151 n.7 (5th Cir. 1993). The Government introduced a photograph at the suppression hearing showing a glass dish with a substance identified as a methamphetamine precursor. (Gov't Ex. 7.)

[13] Defendant does not address whether Elmo is certified in the detection of methylenedioxymethamphetamine, also seized from the home.

relevant" to this inquiry. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 230 (1983). While, Defendant is correct that reliance on an anonymous tip without any information about that person's reliability, veracity or basis for knowledge cannot establish probable cause, the officers did not rely on that alone in drafting the affidavit.

The Fifth Circuit has found a drug dog's alert alone sufficient, in the context of a traffic stop, to provide probable cause for a search. *See United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995). A person, however, has a lesser expectation of privacy in his car than he does in his dwelling, and an affidavit based solely on Elmo's alert and the anonymous tip might be considered insufficient. In addition, however, the affidavit notes that Defendant fled from the scene when he saw the K-9 unit at his home. While the fact that a person flees his house when agents arrive is not, by itself, enough to create probable cause to search the house, it is a relevant consideration in a probable cause analysis. *See United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006). *See also Illinois v. Wardlaw*, 528 U.S. 119 (2000) (holding that, in the context of a traffic stop, evasive behavior, such as flight, is a pertinent factor in determining reasonable suspicion, a less rigorous standard than probable cause). The Court concludes that this affidavit establishes probable cause.

### 2. Good Faith Exception as Applied to Affidavits Prepared by AUSAs

Even if the Court had not found that the affidavit established probable cause or was facially defective as described above, it finds that the good faith exception likely would have applied to allow admission of the evidence. Defendant contends that the good faith exception "protects police officers who are not schooled on the finer nuances of the law and who therefore should not be held accountable for a magistrate's blunder." *See United States v. Leon*, 468 U.S. 897 (1984); *Illinois v. Gates*, 462 U.S. 213. Here, however, Defendant contends that the offense

report clarifies that Deputy Windsor had the assistance of Assistant District Attorney Baldassano in drafting the search warrant. *See, e.g. United States v. Tarzon-Silva*, 960 F.Supp. 1152 (W.D. Tex. 1997) (holding that the good faith exception did not apply because the affidavit was presented on the instructions and authority of the duty AUSA who was "obviously aware of the finer nuances of the law"). The Court does not find *Tarzon-Silva* persuasive in this respect. The Supreme Court and other circuits have routinely applied the good faith exception when the officer was assisted by an AUSA in drafting an affidavit, and other circuits have found that consultation with a prosecutor weighs in favor of objective reasonableness. *See, e.g., United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009); *United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004); *United States v. Merritt*, 361 F.3d 1005, 1013 (7th Cir. 2004), *rev'd on other grounds*, *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996).

### 3. Did Officers Enter Defendant's Home Before a Search Warrant Was Obtained Such that the Affidavit Omits Information of Police Misconduct

A next door neighbor contends that the Harris County Sheriff's deputies first entered the residence through the back of the house. In his Reply, Defendant questions why the officers broke the rear windows to Defendant's home when they allegedly entered through the front door. At the hearing on the Motion to Suppress, the Court heard testimony that before Defendant left his house on January 2, 2009 the back windows to his house were not broken. Defendant introduced daylight photographs showing the windows broken sometime between that time and the next day, when the photos were taken (they are dated by the camera that took them as January 3, 2009). It is unclear when the windows were broken. None of the witnesses who testified at the hearing stayed at the house from the time Defendant left his house in the morning of January 2 and when the photographs were taken.

Deputy Kowis testified that his team secured a perimeter around the house after Elmo alerted and maintained the perimeter until he secured a search warrant. Deputy Kowis left the house after Defendant sped away on his motorcycle, but then both men returned to the home. Deputy Kowis received no reports from the other deputies or from neighbors that windows had been broken during his absence. Furthermore, Deputy Kowis testified that it is routine procedure for his team, in the event that they do break a window during a search, to take out the entire window, including the blinds, so that the deputies have a clear view of the room before they enter. The exhibits introduced by Defendant show a mostly broken pane with the blinds partially obscuring the gap where the window had been. (Def. Ex. 1.) Cindy Cox, Defendant's ex-wife, testified that she stopped by Defendant's house at some point on January 2, 2009. She found him in the patrol car, outside the house. After the search was completed, she followed Defendant while the deputies drove him to be booked and then returned to his house, when she found the broken windows. The Court cannot find sufficient evidence of police misconduct based on this testimony regarding the broken windows to warrant suppression of the evidence.

## III. CONCLUSION

In light of the foregoing and especially the ample probable cause established by the affidavit, the Court finds that the evidence should not be suppressed. The Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this 21st day of August 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT